Madam Clerk, please call the third case. 114-3280, Josephine Glass v. Denise Burke Counsel Good morning, Your Honors. Thank you for your time and consideration. If it pleases the Court and the Counsel, my name is Mark Ressin. I represent the appellant respondent employer, in this case, Gersheimer Glass. The Court is presented with multiple issues in this case, which I submit are reasonable issues and require the Court's scrutiny. I am going to stand on my brief and the arguments made in my brief with respect to those multiple issues. I'm going to focus my time on one issue in my argument today that I find most egregious. Frankly, the ruling, as I review it again in preparing for today, I find somewhat bizarre in terms of what the Commission did here because I'm referring to the choice of doctor and Petitioner exceeding her choice of doctor. And I would urge you to review this issue closely in the event you do find liability here. Deny medical bills associated with treatment by Dr. Giannullis and any treatment that flowed from Dr. Giannullis' care. Now, the reason I say I find the arbitrator and subsequently the Commission's affirmance and the Court's affirmance of the ruling on this issue as bizarre is because neither party even asserted a referral from Dr. Minot to Dr. Giannullis. Neither party even asserted at trial or in the submission of the proposed decisions that this referral occurred, that this was factually true. Can I ask you one question? Yes, sir. And I understand that, but there's one item of evidence that seems to cast that in some doubt. Is it correct that the health insurance form that was actually filed by Dr. Giannullis, in relation to his initial consultation, lists the referring provider as Dr. Minot? Is that not in evidence? The answer to that is yes and no. That is... Yes and no. Yes and no. Because the arbitrator wrote that statement in her decision, and for lack of a better analysis, I would submit that her writing that and analyzing the form that way is simply inept. This is not factually true, based on the petitioner's own admission at trial, number one. And I'll get to the form, okay? But it's not true. I was there. I tried the case. I questioned her. She admitted Minot referred her to Erebendi. Minot is a Southside family doctor. Erebendi is a Southside family doctor. Erebendi is the orthopedic surgeon she had treated with in the past in Olympia Fields for knee problems. That's where Dr. Minot sent her. That's who he dealt with. They're three, four miles apart. But for some reason, she didn't go there on this occasion, correct? She did not go there, okay? She was doctor shopping, plain and simple, okay? But she didn't go there. Yes, she admitted that. Dr. Minot's records are in evidence. They document the referral to Dr. Erebendi. They don't document another referral. She was there. She was free to testify if another referral took place. She didn't say it. I will hand it to her. She was not going to testify to something that wasn't true. She didn't state that this was factually true. The next doctor she saw was Dr. Silber. That was based on a referral by her attorney. She stopped treating with Dr. Silber. Subsequently, she admitted the referral to Dr. Genie Milius came from where? This Illinois Physicians Network, this Plans Referral Program. Yes, there was a form, C-223. What did the form say? Does it just say referring doctor? No, it says referring doctor or other source. It's a HIPAA form. That's the way it's completed. Referring doctor or other source doesn't just mean referring doctor. It means other source. Who are the other sources? What happens when we go to the doctor that we're seeing for the first time? What's the first question or one of the very first questions you answer? Who's your primary care provider? That's where the other source is. He did not make this referral. So the commission interpreted that, though, as being a referral from Manette, right? The commission interpreted it that way, didn't they? Apparently, but that's factually not true. It's contrary to petitioner's admission against your financial interest, and that's not what the form simply provides. It provides for a referring doctor or other source being the primary care provider. That's what they filled in on the form. They weren't necessarily filling it in as the first section. I mean, if you were to research how these forms are to be filled out, that's the information they provide. They provided the information as the primary care provider, but he didn't make this referral. Nevertheless, Janulius's office, they filled this out, right? It came from Janulius, didn't it, his office? I would presume so. Okay. I would presume so. But I believe, based on the totality of the evidence of record and what we know based on petitioner's own admissions, the medical records themselves, the referring doctor was not Dr. Manette. The primary care provider was Dr. Manette, and that's a proper person to list in that section of the form, but he wasn't the referring doctor. He was another source. He was a person that when a doctor questions you when you come in for treatment, you may list as somebody that might want your records or may be providing your records. Dr. Janulius is an orthopedic surgeon in Elmhurst, some 40-plus miles away from Dr. Manette, from Dr. Erebendi. He isn't making referrals to Elmhurst from the south side, and that's the reason he was listed there was as another source. The arbitrator and the commission ignored that verbiage, picked up on the first part of it, and made a ruling, frankly, that isn't factually true. Surprised me. Frankly, I think it surprised my opponent. You can question him about it, but I think, frankly, the petitioner is now in a position where they are encouraging the affirmance of a ruling that they also noticed factually. Were there some billing records of Dr. Janulius in the record, the doctor's billing records? Did they make it into evidence? I'm sorry? Did Dr. Janulius' billing records make it into evidence? The records that are in evidence are the ones that you referred to. Okay. There are some records of Dr. Janulius that are in evidence pursuant to subpoena issued by Mr. Belcher to the Illinois Physicians Network. Did they give any indication as to who referred the patient to him? His actual records do not state Dr. Manat as a referral or any other doctor as a referral source. I had realized Illinois Physician Network was the likely referral source based on my review of the totality of the records I subpoenaed, and that's the reason that I questioned the petitioner in that regard and the petitioner acknowledged it as a referral. But she was there. She testified, I believe she testified honestly, as to how these referrals occurred, and even though it was contrary to her financial interests, she testified truthfully how those referrals occurred, and she certainly did not say Dr. Manat referred her here because that wasn't true. Dr. Manat referred her to a different orthopedic surgeon. So I would urge you to modify this decision, assuming liability, consistent with the actual facts and what's really true. That's all I'm asking you to do. That is factually what occurred, and in this instance, your bill should be denied as she exceeded her allowable choice of physician. Thank you. Counsel, before you finish your argument, I have a question for you, and it relates to the February 2013 remand order by the trial court. Can you explain the rationale behind that order? Yeah. My view of it was there was Judge Sapero that heard this initially. It was assigned to him. He reviewed this record. What bothered him, the commission didn't address it on remand, but truly what bothered him was that the commission, in his view, found Petitioner credible when she testified as to accident and determined, okay, she credibly testified as to accident. And that seemed to him, the commission flipped on her because they wanted her to rule that her medical bills were compensable. So when she testified that the Manat referral was against her interests, you know, when she testified that the Manat referral, she didn't testify that the Manat referral didn't occur, but she testified that the referral to Dr. Giannoulias was from Illinois Physicians Network. In his view, he looked at that and said, oh, okay, so they're not going to believe her when she testifies to something that's harmful to her, but they're going to believe her in this instance. That doesn't make sense. How are they determining credibility here? If she's credible, she's credible as to all her statements. Does that necessarily follow logically that because a person is truthful in one statement, they're truthful in all, or because they're untruthful in one, they're untruthful in all? That seems to me to be rather weird. I'm not taking the position on it one way or another, but that was my interpretation of why he remanded it. It didn't make sense to him that they determined her credible with one statement and then seemingly determined her not to be credible because they were going to determine that the referral came from another source than she stated at trial. You're not suggesting that the commission engaged in outcome-determinative decision-making, are you? Yes, I am, but when I was here last month, I made that statement, and I didn't want to be repetitive and say that this was result-driven. I don't know if I take a position that this was a result-driven decision-making or it was simply erroneous, and I will say I think it was simply erroneous, and I don't believe it's factually true, and if it was factually true, I think Ms. Berg would have been glad to tell us when she came and testified at trial, but she didn't, and she didn't because it didn't happen this way. One other thing, counsel. Did either party request remand? Before Judge Supero. Did the lawyer request remand? It was presented as an option. By the trial court? Who did either party request a remand to the commission for these credibility findings that the trial court ordered? We did. It occurred before Judge Supero. It was presented as an option before Judge Supero, and I did request it, yes. Okay. Thank you. Thank you, counsel. Counsel, you may respond. Thank you. Good morning. May it please the Court? Mr. Osmond. My name is Matt Belcher, and I represent the injured worker. I appreciate that we ratcheted down the accusatory invective for the oral argument, because when I read the brief, it seemed to me that my client was a bank robber or a credit card thief rather than a woman who worked for 37 years. How did she get to Dr. Jean Elias, sir? She was referred by Dr. Manette via the Illinois Physicians Network, and the commission found How did he get via? Is he associated with Illinois Physicians, Manette? Not that I'm aware of, no. Did Manette refer her to Illinois Physicians? No, Illinois Physicians Network. As we know from the absolute cleaning case, the genesis of the referrals Well, I understand that, but I'm trying to get to the idea when you said he got to Jean Elias via Illinois Physicians from Manette. I want to understand, did Manette send her to Illinois Physicians, yes or no? No. How did she get to Illinois Physicians? Illinois Physicians Network. I recommended that she call Illinois Physicians Network in order to facilitate her. And then from Illinois Physicians Network, she got Dr. Jean Elias? They contacted Dr. Manette and got a referral to Dr. Jean Elias. Well, Illinois Physicians contacted Dr. Manette, and then Manette referred her to Jean Elias. That's how she got there. There's a written document signed by Dr. Jean Elias that says that the referral source was Dr. Jean Elias. I understand that. Okay, now I understand it. Thank you. And we talk about doctor shopping, and I'll go backwards from the beginning, but just this doctor shopping thing. So she sees Dr. Manette. If you see in the paperwork itself, it says she's seeing him through her HMO. She gets a referral to an orthopedist. She can't see that orthopedist because they fired her. So if you look in the record, it's on 827 of the plaintiff's brief. So there's video sufficient enough that there's a documentation of a first accident. Tim Griekus, who's the supervisor, views that video and then terminates the lady and sends her a letter saying that your COPA is now $800-something a month, and they don't pay her. They cut off her payments. She don't pay her TTE. Well, listen, I can answer that. He focused on a single issue, and that is whether Junelius is within the chain of referral. And you're telling us there's evidence in the record that it was Illinois physicians that went to Manette and got the referral to Junelius. The record indicates that Dr. Manette referred Ms. Bird to Dr. Junelius. That's not the question I asked you. The question I asked you was is there evidence in the record that it was Illinois physicians that went to Manette to get the referral to Junelius. No. There is no evidence of that. Okay. So we have a contact by your client to Illinois physicians. Yes. Instigated by your suggestion. Yes, just so you know. And Illinois physicians comes up with Dr. Junelius as their most acutest. Is that correct? Yes, just so you know. Okay. So how do we bring Manette and connect Manette to Junelius? Because the way to determine what's in the chain of referrals means it's a factual finding according to absolute cleaning citing of Nabisco brand. We find a piece of paper that's a medical document that's signed by Dr. Junelius indicating that Ms. Bird was referred by Dr. Manette. The Works Compensation Commission reviewed that document and made a factual determination that But then, just to get the facts before what we conclude the commission did, you said earlier that physicians' referrals contacted Manette. That's my understanding. It's only an understanding. Justice Hoffman's question was there's nothing in the record to show that communication. You're correct. Are you saying that the Workers' Compensation Commission did and could have drawn that inference based on the document? They made that factual finding based upon the document. So absolute cleaning is also the same counsel's case, and the facts are very similar. A person has an accident. They fire her. She can't get access to medical treatment. In this instance, they transported her to the emergency room because that's the company policy. They didn't pay the emergency room bill. It's still not paid. The next morning they transported her to the occupational health clinic. The occupational health clinic. Counsel, why does that have to do with whether Junelius was within the chain of referral? I know you want to paint them as bad guys, and that's great in front of the commission. Let's get to the issue we have to decide. We have to decide one issue. Is there sufficient evidence in the record to support the commission's finding that Junelius was within the two-physician chain of referral because one of his billing records says he was referred by Dr. Junelius or Dr. Manette? That's all we have to do. Whether they're good guys or bad guys makes no difference. The answer is yes. And you pointed it out, the documentary evidence, and he isn't out with the other points, so you don't need to go into those other points. So you're just saying, back to Justice Stewart's question, that was a reasonable inference that could be made by the commission. Is that correct? Or that it has to be an inference made by the commission, and now you should be arguing whether it's reasonable. Otherwise, how do you get there? I think that, Justice Holdren, here's the situation. The commission is that we consider them to have special expertise in medical matters. There's a piece of paper signed by Dr. Junelius that indicates that Dr. Manette referred Denise Bird to him. She's not doctor shopping because she gets a referral to an orthopedist. She can't get in to see him. She goes to see Dr. Silver. Dr. Silver says that she needs to have knee surgery. If you read Dr. Silver's letters to the insurance company, he's asking for the knee surgery to be authorized. It's not authorized. So then she has to go to another doctor to get that same knee surgery that Dr. Silver, a 9-23-2011 Dr. Silver. Waiting for approval of surgery from insurance. Continue all four. It never comes. So she has to get to see another doctor because she has no health insurance because she's been fired from her job. We're not down to all that area we talked before. You already clarified that. But we're right here on matters of fact and law. Okay. Keep going. Yes. Haven't you already answered the question? Yes. That's why I'm standing here quietly waiting to see if there's any more questions. I don't have any. Do you have anything further? I do not. Okay. Thank you. Thank you, counsel. Oh, you certainly may. Yes. Thank you. What strikes me, and I'll just state here, if that's okay. That's fine. What strikes me as we keep talking about this piece of paper, simply stating referral, and I please urge you to take a look at the paper form, which is C-223, and note that it doesn't just state referral. It's paragraph 17, and it states, Name of referring provider or other source. That's what Dr. Monod wants. He wants the or other source. He is the primary referral provider. That's what she reported. It isn't documented in any of the medical records of him being a referral source. When he says or other source, what does or other source mean? Source of what? Primary care physician, supervising physician, primary care physician. That means source? Source of what, information? Source. You can tell that's what it means, source of information? Yes. I think if you know the research that he performed and how it's supposed to be completed, I think that's correct. Or other source in terms of your medical history, in terms of your medical history. There's a source of a medical care because he is the primary care provider for her. If any of us would go to the doctor for the first time, it would be something that you would list for that provider that being your primary care provider. I believe that's what she did for Dr. Chambelius. Was she to perform doctor to Dr. Chambelius? No. She didn't say that. Dr. Chambelius records don't say that. She acknowledged it on the physician's record. We have trials where people must appear and testify in person under oath. They are confronted at that time. They are questioned. She told the truth. It contradicts this statement of a foreign physician. This doesn't just ask for a foreign physician. It has to be a foreign physician or other source. Factually, this is what occurred. What do we have as a listing of referring physicians in that box? What we have is Dr. Bernat's name under the box that says name of referring provider or other source. Thank you. Thank you. Thank you, counsel. Both for your arguments in this matter this morning will be taken under advisement at a written disposition, shall I assume.